**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**INDEPENDENCE COUNTY, *et al.*** **PLAINTIFFS**

**v.** **1:07CV00033-WRW**

**PFIZER, INC., *et al.*** **DEFENDANTS**

**ORDER**

Pending is Defendants' Joint Motion for Judgment on the Pleadings (Doc. No. 43). Plaintiffs have responded (Doc. No. 53) and Defendants have replied (Doc. No. 62). For the reasons set out below, Defendants' Motion is GRANTED.

**I. BACKGROUND**

Defendants produce and market cold remedies containing ephedrine and pseudoephedrine.[1] Aside from their legal use, ephedrine and pseudoephedrine are used in the production of methamphetamine, a highly addictive and very destructive illegal drug.[2] Plaintiffs allege that Defendants have known since at least 1986 that ephedrine and pseudoephedrine from their products are used to make methamphetamine, and that Defendants could have taken steps on their own to impede or eliminate the use of their products in the manufacture of methamphetamine.[3] Plaintiffs explain that in Arkansas methamphetamine is manufactured largely in small toxic labs ("STLs") located in homes, tents, barns, or hotel rooms.[4] The dangers

[1]Doc. No. 3.

[2]*Id.*

[3]*Id.*

[4]*Id.*

involved in the manufacture of methamphetamine are explosions, chemical burns, fires, chemical spills, and toxic fumes.[5] Children are particularly at risk when exposed to methamphetamine production and when cared for by methamphetamine users.[6]

Plaintiffs allege that they spend significant amounts of money to combat methamphetamine, including costs incurred to: treat users; investigate and "remediate" theft and violent actions taken by methamphetamine users; law enforcement costs in investigating and eradicating the manufacture and use of methamphetamine; treatment for children exposed to methamphetamine and neglected by methamphetamine using care givers; and cleaning up STLs. Plaintiffs allege that Defendants have fought against changes in regulations that would restrict the sale of their products.[7] Plaintiffs also allege that Defendants have the knowledge to make a cold remedy without ephedrine or pseudoephedrine that works as well as products containing those substances.[8] Plaintiffs claim that but-for Defendants' products, the methamphetamine problem would not be of the scale that it is today.[9] Plaintiffs seek relief under four causes of action: violation of the Arkansas Deceptive Trade Practices Act, public nuisance, unjust enrichment, and violation of Ark. Code Ann. §§ 5-64-1102 and 16-118-107**.**

Defendants allege that they produce and market legal products, that the industry is highly regulated at both the federal and state level, and that Defendants are in compliance with all

---

[5]*Id*.

[6]*Id*.

[7]Doc. No. 3.

[8]*Id*.

[9]*Id*.

applicable laws.[10] Defendants assert that: Plaintiffs' injuries are too remote for Defendants to be liable; that Defendants did not proximately cause Plaintiffs' injuries; that recovery is barred by the free public services doctrine; and that Plaintiffs cannot succeed under any cause of action because they fail the meet the elements necessary for each claim.

**II. DISCUSSION**

A. Judgment on the Pleadings Standard

A motion for judgment on the pleadings[11] is evaluated under same standard as a motion to dismiss for failure to state a claim.[12] The facts set out by Plaintiff should be considered as true.[13] A motion for judgment on the pleadings should be granted if "it appears beyond doubt that plaintiff can prove no set of facts to warrant a grant of relief."[14] A plaintiff's complaint must contain facts that "state a claim as a matter of law . . . ."[15]

Plaintiffs First Amended Complaint names four causes of action. Judgment on the pleadings in favor of Defendants is proper only if Plaintiffs First Amended Complaint does not

---

[10]Doc. No. 44.

[11]Fed. R. Civ.P. 12(c).

[12]Fed. R. Civ. P. 12(b)(6). See *Westcott v. Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) ("[W]e review [a] 12(c) motion under the standard that governs 12(b)(6) motions") (citations omitted).

[13]*McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007) (citing *Botz v. Omni Air Int'l.*, 286 F.3d 488, 490 (8th Cir. 2002)).

[14]*Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1060 (8th Cir. 2006).

[15]*Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1992) (citing *Nickens v. White*, 536 F.2d 802, 803 (8th Cir. 1976)).

state any claim as a matter of law.

B. Violation of the Arkansas Deceptive Trade Practices Act

The Arkansas Deceptive Trade Practices Act[16] (the "ADTPA") focuses on consumer protection in connection with trade practices.[17] The Act makes "[e]ngaging in any . . . unconscionable, false, or deceptive act or practice in business, commerce, or trade . . . " unlawful.[18] The Arkansas Supreme Court defined an unconscionable act as "an act that 'affronts the sense of justice, decency, or reasonableness,'"[19] including acts that violate public policy or a statute.[20] Any person who suffered actual damage or injury because of a violation of the ADTPA has a private cause of action to recover damages.[21] "Actual damage or injury is sustained when the product has actually malfunctioned . . . ."[22] In connection with causation, "[o]ne is not ordinarily liable for the criminal acts of third persons absent a duty of care arising from a special

---

[16]Ark. Code Ann. §§ 4-88-101 to 4-88-503.

[17]See *id.*

[18]Ark. Code. Ann. § 4-88-107(a)(10).

[19]*Baptist Health v. Murphy*, 365 Ark. 115, 128 (2006) (citing Black's Law Dictionary 1561 (8th ed. 2004)).

[20]*Id*. In *Baptist Health v. Murphy*, the Arkansas Supreme Court found that an economic-credentialing policy that disrupted the relationship between doctors and their patients, as well as decreased the amount of available hospital beds, violated the ADTPA because the policy was contrary to public policy. *Id*. at 810. See also *State v. R&R Investment Co.*, 336 Ark. 289 (1999) (finding that a usurious contract was unconscionable and violated the ADPTA.).

[21]Ark. Code Ann. § 4-88-113(f). If appropriate, attorneys fees may also be awarded under this section.

[22]*Wallis v. Ford Motor Co.*, 362 Ark. 317, 328 (2005) (holding that diminished value of a product is not actual damage). See also *FMC Corp. v. Helton*, 360 Ark. 465, 482-483 (2005) (finding that damages for mental anguish are separate from actual damages).

relationship."[23] "Duty is a concept which arises out of the recognition that relations between individuals may impose upon one a legal obligation for another."[24]

Plaintiffs allege that Defendants acted unconscionably in producing and distributing cold medicine containing ephedrine and pseudoephedrine, substances used in the production of methamphetamine.[25] However, because Plaintiffs have not "suffer[ed] actual damage or injury as a result of an offense or violation" of the ADTPA, Plaintiffs apparently do not have standing to bring a cause of action under this Act.[26] Even if Plaintiffs did have standing, Plaintiffs' ADTPA claim fails for three reasons: (1) the ADTPA does not protect consumers against third party criminal acts; (2) lack of causation; and (3) remoteness of the injury.

---

[23]*First Comm. Trust Co. v. Lorcin Eng'g*, 321 Ark. 210, 215 (1995); *Holloway v. Stuttgart Reg'l. Med. Ctr.*, 62 Ark. App. 140, 141 (1998).

[24]*Mans v. Peoples Bank of Imboden*, 340 Ark. 518, 524 (2000).

[25]Plaintiffs allege Defendants violated provisions of the, in particular Ark. Code Ann. § 4-88-107(a)(10), by engaging in the following unconscionable and unfair acts:

> (a) [p]roducing and selling products containing ephedrine and psuedoephedrine to cooks who Defendants knew or reasonably should have know were using the products to manufacture methamphetamine; (b) [r]efusing to take measure at their disposal that would have prevented the use of their products in the manufacture of methamphetamine; (c) [a]ctively impeding measures that would have prevented their products from being used to manufacture methamphetamine; and (d) [p]articipating in, assisting, facilitating, aiding and abetting or knowingly benefitting from any or all of the foregoing conduct.

[26]Ark. Code Ann. § 4-88-113(f). See also *Wallis v. Ford Motor Co.*, 362 Ark. 317 (2005) (deceptive trade practices lawsuit properly dismissed because no actual damage or injury was suffered by plaintiffs).

1. <u>The Purpose of the ADTPA</u>

Both the preamble to the ADTPA[27] and the activities that Act makes unlawful[28] show that the ADTPA protects consumers from unfair ways of doing business.[29] No provision of the ADTPA supports a conclusion that the Act protects against third party criminal conduct. Plaintiffs argue that Defendants' production and sale of cold medicines containing ephedrine and

[27]The preamble to the ADTPA reads "[w]hereas, the public health, welfare, and interest require a strong and effective *consumer protection program* to protect the interests of both the *consumer public* and the legitimate business community . . . and for the purpose of developing and providing preventative and remedial programs affecting the interest of the *consumer public* . . . ." (emphasis added).

[28]The trade practices prohibited by the ADTPA include, but are not limited to:
(a)(1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model; (2) Disparaging the goods, services, or business of another by false or misleading representation of fact; (3) Advertising the goods or services with the intent not to sell them as advertised; (4) Refusal of a retailer to deliver to a customer purchasing any electronic or mechanical apparatus the record of warranty and statement of service availability which the manufacturer includes in the original carton or container of the product or the refusal to make available on request information relating thereto; (5) The employment of bait-and-switch advertising consisting of an attractive but insincere offer to sell a product or service which the seller in truth does not intend or desire to sell, evidenced by: (A) A refusal to show or a disparagement of the advertised product; (B) The requirement of a tie-in sale or other undisclosed conditions precedent to the purchase; (C) A demonstration of a defective product; or (D) Other acts demonstrating an intent not to sell the advertised product or services; (6) Knowingly failing to identify flood, water, fire, or accidentally damaged goods as to such damages; (7) Making a false representation that contributions solicited for charitable purposes shall be spent in a specific manner or for specified purposes; (8) Knowingly taking advantage of a consumer who is reasonably unable to protect his or her interest because of: (A) Physical infirmity; (B) Ignorance; (C) Illiteracy; (D) Inability to understand the language of the agreement; or (E) A similar factor; (9) The offering for sale, assembly, or drafting of any trust document, including a living trust, by a nonlawyer, excluding the marketing, assembly, and funding by bank trust departments and trust companies; (10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade; and (11) (A) Displaying or causing to be displayed a fictitious or misleading name or telephone number on an Arkansas resident's telephone caller identification service. (B) Subdivision (a)(11)(A) of this section does not apply to the transmission of a caller identification service by a telecommunications provider. (b) The deceptive and unconscionable trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state.

[29]See generally Ark. Code Ann. §§ 4-88-103 to 4-88-503.

pseudoephedrine is itself illegal and unconscionable. But, in connection with their ADTPA claim, "unconscionable" must be considered in light of trade practices.

The United States Food and Drug Administration (FDA) approved pseudoephedrine as an active ingredient in cold and cough remedies for over the counter human use.[30] The FDA regulates the labeling of nasal decongestants, including dosage warnings.[31] The United States Drug Enforcement Agency ("DEA") regulates manufacturers and distributors of products containing pseudoephedrine.[32] Plaintiffs did not allege that Defendants' actions violated any federal regulation in connection with the labeling or distribution of their products, or that Defendants' actions violated Arkansas laws regulating who can possess and sell products containing ephedrine or pseudoephedrine, and in what amounts.[33] Plaintiffs' allegation regarding Defendants' trade practices is that it is unconscionable to produce and distribute medicine containing ephedrine and pseudoephedrine -- that but-for Defendants' products, methamphetamine production and use would be sharply reduced. Nothing in the record shows that Defendants' *trade practices* are unconscionable, and the application of the ADTPA is limited to *trade practice*. Further, Plaintiffs' ADTPA claim fails because of lack of causation and remoteness of the injury.

2. Causation

There are many illegal intervening acts involved in changing FDA-approved cold medicine into an illegal drug, for example: acquiring more than the legal amount of ephedrine or

---

[30]21 C.F.R. § 341.20.

[31]21 C.F.R. § 341.80, 21 C.F.R. § 341.85.

[32]See 21 C.F.R. § 1305.04, 21 C.F.R. § 1304.23, 21 C.F.R. § 1314.02, among others.

[33]Ark. Code Ann. § 5-64-1101 and § 5-64-1103.

pseudoephedrine,[34] possessing more than the legal amount of ephedrine or pseudoephedrine,[35] possessing ephedrine or pseudoephedrine with the intent to manufacture methamphetamine,[36] and

manufacturing methamphetamine.[37] As noted above, one is not generally liable for the criminal conduct of another absent a special relationship.[38] It follows that unless Defendants owe Plaintiffs a duty of care based on a special relationship, then Defendants cannot be liable to Plaintiffs for criminal acts of others. The record reveals no special relationship between the parties. It is undisputed that Plaintiffs expend tremendous resources in combating methamphetamine, but it is the methamphetamine cooks, distributors, and users who proximately cause Plaintiffs' damage, not Defendants.

3. Remoteness of the Injury

"[D]irectly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely."[39] Arkansas law recognizes the remoteness doctrine,[40] and the doctrine has been used to bar recovery by a plaintiff that attempted to recover for costs spent on the healthcare and treatment of smokers.[41] In *Arkansas Carpenters' Health & Welfare Fund*, the plaintiff, an

[34]Ark. Code Ann. § 5-64-1103(f)(1).

[35]Ark. Code Ann. § 5-64-1101.

[36]Ark. Code Ann. § 5-64-1102.

[37]Ark. Code Ann. § 5-64-401(a).

[38]*First Comm. Trust Co.*, 321 Ark. at 215.

[39]*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 269-270 (1992) (citation omitted).

[40]See *Larson Machine, Inc. v. Wallace*, 268 Ark. 192 (1980).

[41]*Arkansas Carpenters' Health & Welfare Fund v. Philip Morris Inc.*, 75 F. Supp. 2d 936 (E.D. Ark. 1999).

employee welfare benefit plan, sued cigarette manufacturers, seeking to recover for "tobacco related benefit costs incurred when paying heath and welfare claims to its plan participants."[42] In that case, a central tenet in plaintiff's claim was that the defendants knew about the dangers of smoking, including the addictive qualities of nicotine.[43] The United States District Court for the Eastern District of Arkansas held that there was "no *direct link* between the alleged misconduct and the damages of which plaintiff complains . . . ."[44] Similarly, Plaintiffs in this case allege that Defendants produced and sold cold medicines, knowing those cold medicines were being used in the production of methamphetamine. Plaintiffs, like the plaintiffs in *Arkansas Carpenters' Health*, incur costs in battling the methamphetamine plague. Also like in *Arkansas Carpenters' Health*, there is no *direct link* in between Defendants' products and Plaintiffs' damages. In cases brought against both gun and cigarette manufacturers, many other courts have reached the conclusion the defendants cannot be liable for an injury so remote.[45]

Plaintiffs counter Defendants' remoteness argument by pointing out that in *Baptist Health v. Murphy*, the Arkansas Supreme Court found unconscionable and a violation of public policy Baptist's policy that would inevitably interrupt the plaintiffs' relationship with their clients, thus inflicting harm on a third party.[46] Plaintiffs contend that *Baptist Health* permits a court to find an act unconscionable as violating public policy when a third party was harmed.

---

[42]*Id.* at 938-939.

[43]*Id.*

[44]*Id.* at 941.

[45]See *City of Phila. v. Baretta U.S.A. Corp*., 277 F.3d 415 (3rd Cir. 2002); *Camden County Bd. Of Chosen Freeholders v. Baretta*, 273 F.3d 536 (3rd Cir. 2001); *Eastern States Health and Welfare Fund v. Philip Morris, Inc*., 729 N.Y.S.2d 240 (2000); *District of Columbia v. Beretta U.S.A., Corp*., 872 A.2d 633 (D.C. App. 2005); *City of Chicago v. Beretta U.S.A. Corp*., 213 Ill. 2d 351 (2004); *and Ganim v. Smith & Wesson Corp*., 258 Conn. 313 (2001).

[46]*Baptist Health*, 365 Ark. at 128.

That much appears to be true. However, in *Baptist Health*, the plaintiffs alleged tortious interference with business expectancy, among other claims.[47] A claim for tortious interference is for damage suffered directly by the plaintiff and caused directly by the defendant's action.[48] At least part of the reason the court found Baptist's policy unconscionable was that the policy forced the plaintiffs to either relinquish any ownership interest in a competitor or relinquish their relationship with their patients who required treatment at Baptist.[49] For Plaintiff's situation in this case to be similar, Defendants would have had to harm Plaintiffs directly without the intervening acts of third parties. With respect to public policy, Defendants' products provide an accepted method of treating colds when used properly. I find nothing unconscionable in that.

C. Public Nuisance

Plaintiffs assert that ownership of land is not an element of public nuisance, and cite law from other jurisdictions, as well as the Restatement (Second) Torts, in support of their assertion.[50] However, I must apply the law of the forum state -- Arkansas.[51] The Arkansas Supreme Court defines a nuisance as "conduct by one landowner which unreasonably interferes with the use and enjoyment of the lands of another . . . ."[52] The difference between private and public nuisance is "simply the extent of the injury, *i.e*. the number of persons suffering the

---

[47]*Id*. at 122.

[48]See *id*. (citing *Stewart Title Guar. Co. v. Am. Abstract & Title Co.,* 363 Ark. 530 (2005)).

[49]*Baptist Health*, 365 Ark. at 128.

[50]Doc. No. 53. Plaintiffs cite the Restatement (Second) Torts § 821B.

[51]See *Blair v.Willis*, 420 F.3d 823, 829 (8th Cir. 2005).

[52]*Milligan v. General Oil Co*., 293 Ark. 401, 404 (1987) (citing *Ark. Rel. Guidance Fdn. v. R. J. Needler*, 252 Ark. 194 (1972)).

effects of the nuisance."[53] Defendants do not own the land on which the alleged nuisance occurred. Because Defendants are not landowners, Plaintiffs cannot succeed on their public nuisance claim.

D. Violation of Ark. Code Ann. §§ 5-64-1102(b) and 16-118-107

Ark. Code. Ann. § 5-64-1102 is titled "Possession with Intent to Manufacture -- Unlawful Distribution." That section makes it "unlawful for a person to sell, transfer, distribute, or dispense any product containing ephedrine . . . if the person sells, transfers, distributes, or dispenses the product with reckless disregard as to how the product will be used." The title and provisions of this section, "Possession with Intent to Manufacture -- Unlawful Distribution," reveal that the section targets distribution to persons having the intent to manufacture methamphetamine. Any person who violates this provision is guilty of a Class D Felony.[54] A person injured by the conduct of another that constitutes a felony has a private cause of action to recover damages caused by the felonious conduct.[55]

Plaintiffs assert that Defendants violated § 5-64-1102 by distributing their products with reckless disregard to the fact that some individuals will use the products illegally. Another section of the Arkansas Code, § 5-64-1101, explains who can possess and sell ephedrine and pseudoephedrine, and in what amounts. That section governs sales by manufacturers and wholesalers to various purchasers, including retailers. Based on the record, it appears that § 5-64-1101 applies to Defendants, not § 5-64-1102. There is nothing in the record showing that Defendants distributed their products to unlicensed or unregistered entities; nothing in the record indicates an intent to manufacture methamphetamine on the part of those entities. Further,

---

[53] *Id.*

[54] Ark. Code Ann. § 5-64-1102(b)(2).

[55] Ark. Code Ann. § 16-118-107.

Plaintiffs never allege that Defendants violated § 5-64-1101. It appears that Defendants' transfer or distribution of their products complied with both Arkansas statutes and federal regulations.[56] Even considering Defendants' actions under § 5-64-1102, I am not convinced that Defendants acted with reckless disregard. This is especially so when neither Plaintiffs nor Defendants addressed what would constitute reckless disregard in connection with § 5-64-1102, and when Plaintiffs offered no particular examples of Defendants' reckless behavior beyond Plaintiffs' broad allegations that distributing their products was reckless. Accordingly, Plaintiffs' claim that Defendants violated Ark. Code Ann. § 5-64-1102 fails.

E. Unjust Enrichment

Under Arkansas law, "an action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain."[57] "There must also be some operative act, intent, or situation to make the enrichment unjust and compensable."[58] A party who is free from fault cannot have been unjustly enriched only because he chose to exercise a legal right.[59]

Plaintiffs assert that the unjustness of Defendants' enrichment comes from the violations of law and policy discussed in Plaintiffs' First Amended Complaint and Response to Defendants' Motion for Judgment on the Pleadings.[60] As set out above, I am not persuaded that Defendants violated the law or public policy. I believe Defendants exercised their legal right in choosing to

---

[56]Doc. No. 62.

[57]*Merchants & Planters Bank & Trust Co. v. Massey*, 302 Ark. 421, 424 (1990) (citing *Frigillana v. Frigillana*, 266 Ark. 296 (1979)).

[58]*Hatchell v. Wren*, 363 Ark. 107, 117 (2005).

[59]*Id*.

[60]Doc. No. 53.

sell their products. Defendants cannot be penalized for exercising that right. Because Defendants did not violate public policy or the law, the "unjust" element of unjust enrichment is not satisfied. Plaintiffs cannot succeed on a claim of unjust enrichment.

Because Plaintiffs cannot succeed on any of their causes of action, I will not address Defendants' argument that Plaintiffs claims are barred by the free public services doctrine.

**III. Conclusion**

Based on the findings of fact and conclusions of law above, Defendants' Motion for Judgment on the Pleadings is GRANTED and this case is DISMISSED with prejudice. All other pending motions are MOOT.

IT IS SO ORDERED this 11th day of February, 2008.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE